UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 10-207 |
| v. | * | SECTION: "S" |
| ROLAND J. BOURGEOIS, JR. | * | |

\*   \*   \*

## GOVERNMENT'S SENTENCING MEMORANDUM

**NOW INTO COURT** comes the United States of America, appearing through undersigned counsel, and hereby respectfully submits this sentencing memorandum to assist this Court in deciding whether to accept the Plea Agreement pursuant to Rule 11(c)(3)(A) of the Federal Rules of Criminal Procedure and in determining the appropriate sentence for the defendant, Roland Bourgeois, Jr.  The United States respectfully requests that this Court accept the Plea Agreement and impose a sentence of ten years of imprisonment followed by five years of supervised release.  The defendant has admitted that, in 2005, in the aftermath of Hurricane Katrina, he fired a shotgun at three African-American men because of their race, wounding all three victims.  The Plea Agreement in this case ensures that the defendant finally will be held accountable for the serious hate crime he committed more than 13 years ago, while also avoiding re-traumatizing the victims through a difficult and emotional trial and appropriately accounting for the defendant's significant medical concerns.

The government requests that this Court find that the Defendant's adjusted offense level under the U.S. Sentencing Guidelines is 47; that the statutory maximum for Count One is ten years, and the mandatory minimum for Count Two is a consecutive five years; that the recommended Guidelines sentence, which cannot be higher than the statutory maximum, is fifteen years; and that

a sentence of ten years of imprisonment and five years of supervised release is sufficient, but not greater than necessary, to satisfy the requirements of 18 U.S.C. § 3553(a).

## I.     PROCEDURAL HISTORY

The defendant was charged in July 2010 with civil rights, obstruction, and firearms offenses.  The defendant sought and obtained a declaration of incompetence to stand trial, and for many years remained released on a surety bond with pretrial supervision.  Seven years after the initial charge, and twelve years after the crime, the defendant was found to have violated the conditions of his pretrial release by possessing firearms.  The defendant was then ruled to be competent to stand trial, and on October 17, 2018, he pleaded guilty to a two-count Superseding Information.  Count One of the information charges the defendant with violating 18 U.S.C. §§ 245(b)(2)(B), 2, for firing a shotgun at three African-American men because of their race and because they were using the public streets of New Orleans, causing bodily injury to each of the three victims.  Count Two charges the defendant with violating 18 U.S.C. § 924(c) for using and carrying a firearm during the shooting charged in Count One.  Under the terms of the Plea Agreement, the defendant faces a minimum term of imprisonment of 60 months and a maximum term of imprisonment of 120 months.  In light of the circumstances of this case and the characteristics of the defendant, the government asks the Court to issue the maximum sentence permitted under this agreement.

## II.    FACTUAL BACKGROUND

The Guidelines instruct courts to consider, in determining the applicable guidelines and any adjustments, "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured of willfully caused by the defendant," as well as any other "information concerning the background, character, and conduct of the defendant."  U.S.S.G. § 1B1.3 and

§ 1B1.4. This Court is well acquainted with the facts of this case, and the government hereby incorporates the Factual Basis, Rec. Doc. 225, to which the defendant admitted during his plea allocution; the Government's Response to Defendant's Post-Hearing Memorandum, Rec. Doc. 211, and exhibits cited therein; the factual findings made by this Court regarding the defendant's competency, Rec. Doc. 212; and the U.S. Probation Officer's summary of the facts about the offense in the Presentence Investigation Report ("PSIR"). To assist the Court, the government provides this overview of the facts relevant to sentencing:

In the aftermath of Hurricane Katrina, the defendant and other white male residents of the Algiers Point neighborhood of New Orleans began collecting weapons, building barricades, and patrolling their predominantly white neighborhood. The defendant and several other white males built a barricade near the defendant's house, at the intersection of Vallette Street and Pelican Avenue, and discussed defending their neighborhood from "outsiders" and talked about shooting "n*ggers." The defendant provided firearms to at least two of these men. The defendant also gave his son, M.B., a gun and a pair of binoculars and ordered M.B. to stand watch over the streets near the defendant's house.

On or about September 1, 2005, D.H., M.A., and C.C., walked into Algiers Point in an effort to reach the ferry landing, a site that state and federal agencies were using as an evacuation point. All three men are African-American, and none of them were armed or posing a threat to anyone in the neighborhood.

The defendant's son, M.B., saw the three men walking up the street toward the barricade near his father's house. M.B. drew the defendant's attention to the men, and the defendant ordered M.B. to hide. Upon hearing this command, M.B. feared the defendant might shoot the men and begged the defendant not to do "anything."

When the three African-American men crossed the barricade, the defendant opened fire with a shotgun, wounding all three men. As the three wounded men fled, the defendant fired at them again, yelling "Run, n*gger, run!" The defendant found D.H.'s baseball cap, which had D.H.'s blood on it, on the ground. The defendant displayed the bloody cap to other men and, as they cheered, the defendant placed the cap on his head.

T.B., an African-American woman who lived on the same street as the defendant, heard the gunfire. When she arrived at the scene, T.B. heard the defendant boasting that he had shot someone and pledged to "kill that n*gger" if the victim had survived the initial shooting. T.B. became scared; she knew that two of her male relatives would soon arrive at her house, which had not been damaged by the storm, to stay with her until they could evacuate. T.B. told the defendant that her relatives were on their way to the neighborhood and asked the defendant not to shoot them. In response, the defendant warned, "Anything coming up this street darker than a brown paper bag is getting shot."

Years later, in July 2009, agents from the Federal Bureau of Investigation ("FBI") interviewed the defendant about the shooting. The defendant made several false statements during that interview, including that he had never fired a shotgun and that he knew nothing about any shooting incidents in Algiers Point in the aftermath of Hurricane Katrina. After that interview, the defendant directed his son to lie to the FBI and to deny having any knowledge of the shooting.

## III. ARGUMENT

A ten-year term of imprisonment, followed by a five-year term of supervised release, is warranted in this case. A sentence at the top of the range permitted by the plea agreement is necessary to ensure justice for the victims, to reflect the seriousness of this hate crime offense, and to deter the defendant and others from engaging in such conduct in the future. At the same time,

the cap set by the Plea Agreement is justified because it appropriately takes into account the defendant's serious medical conditions, the desire of the victims and witnesses to avoid a trial, and the litigation risks inherent in trying a case that is more than a decade old.

### A. The Parties Agree on the Applicable Guidelines Range

To determine the defendant's sentence, this Court must start by correctly calculating the defendant's Guidelines range. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018) ("District courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.") (internal quotation marks and alterations omitted). Here, the U.S. Probation Officer ("USPO") calculated the defendant's total offense level to be 47,[1] and found that his criminal history is Category I. *See* PSIR ¶¶ 58-85, 88. The government submits that the USPO's calculations are correct, and the defense has not lodged any objections to those calculations. Under the Guidelines, an offense level of 47 ordinarily results in a recommended sentence of life imprisonment.

As the USPO correctly noted, Count One of the Superseding Information has a statutory maximum of ten years, and, as a result, the guideline sentence for this count is ten years, i.e., the statutory maximum. *See* PSIR ¶ 130; U.S.S.G. § 5G1.1(c)(1). Count Two has a statutorily mandatory minimum term of imprisonment of five years, to be served consecutively to the sentence imposed for Count One. *See* 18 U.S.C. § 924(c)(1)(A)(i). Under U.S.S.G. § 2K2.4(c), the recommended guidelines sentence for Count Two is five years, i.e., the minimum term of imprisonment required by the statute. As a result, the recommended Guidelines sentence is a total of fifteen years.

---

[1] If the defendant continues to accept responsibility through sentencing, the government will move at the sentencing hearing for an additional one-level reduction to his offense level. *See* U.S.S.G. § 3E1.1.

**B. The Statutory Sentencing Factors Enumerated in 18 U.S.C. § 3553 Support a Term of Imprisonment of Ten Years**

Under Title 18, Section 3553, a sentencing court must account for the nature and circumstances of the offense; the history and characteristics of the defendant; the kinds of sentences available; the applicable Guidelines range; the need for unwarranted sentencing disparities among similarly situated defendants; and the need for restitution to the victims.[2]  18 U.S.C. § 3553.  The sentence imposed must also "reflect the seriousness of the offense, . . . promote respect for the law, and . . . provide just punishment for the offense," as well as "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and afford the defendant necessary educational training, medical care, or other treatment.  *Id*.

Here, the government requests that this Court impose a total term of imprisonment of ten years – five years for Count One and a consecutive five years for Count Two.  The government submits that this sentence is sufficient, but not greater than necessary, to satisfy the factors outlined in Section 3553.  Nothing in the record warrants providing the defendant with any additional downward variances.

*Nature and Circumstances of the Offense/Seriousness of the Offense.*  There can be no question that this case involves an extremely serious crime.  Before the shooting, the defendant and others barricaded the streets and discussed killing African Americans who entered the neighborhood.  The defendant played an organizing role in this group of vigilantes, arming himself with a shotgun, ordering his son to stand watch, and providing other residents, as well as his juvenile son, with firearms.  The defendant acted with the intent to kill African Americans when he opened fire on three victims who were doing nothing other than walking down the street.  He

---

[2] The government is in the process of seeking documentation for any restitution claimed by the victims.  The government requests, pursuant to 18 U.S.C. § 3664(d)(5), that this Court withhold final judgment on restitution for ninety days after sentencing.

shot at them without any warning, and continued shooting as they fled for their lives. He then celebrated that he had "got one" by taking as a trophy the bloody baseball cap of one of the victims, D.H., and placing it on his head. And, as the defendant made clear to his neighbor, he was not satisfied with shooting these three victims – he planned to shoot any other African-American males who entered the neighborhood to seek refuge from the storm's aftermath.

The circumstances of this hate crime are particularly troubling. The defendant shot at the three victims as they sought to evacuate the city after an unprecedented natural disaster. The government had designated the ferry in Algiers Point as an evacuation point for residents of New Orleans. By shooting at African Americans and organizing vigilante patrols in Algiers Point, the defendant exacerbated the climate of fear in the neighborhood and prevented victims of the storm from reaching safety through a designated evacuation point.

*Defendant's History and Characteristics.* The government acknowledges that the defendant has a serious, chronic medical condition, and that this condition is a mitigating factor justifying the below-guideline sentence called for by the Plea Agreement. However, as fully detailed in the government's briefing on the defendant's competency, the defendant's current condition does not warrant any sentence lower than the top end of the range allowed for by the Plea Agreement.

The defendant's other characteristics also counsel in favor of a ten-year sentence, at the top end of the range allowed for under the plea. Since this shooting took place more than 13 years ago, the defendant has never expressed remorse for the shooting. To the contrary, he bragged about wounding the victims immediately after the shooting and continued to boast about the shooting on numerous occasions. He obstructed the investigation by lying to the FBI, and then tried to convince his son to lie to the FBI, which would have exposed his own son to federal

charges.  The defendant's utter lack of contrition for this attempted hate crime murder warrant a serious sentence.  On the other side of that balance is the defendant's ultimate acceptance of responsibility.  Through this plea, he is admitting his actions, accepting responsibility, and providing closure to this painful event without forcing his victims and the witnesses to relive this incident at trial.

*Just Punishment.*  The three victims in this case have been waiting for justice for more than a decade, and they deserve a sentence that adequately accounts for the injuries that the defendant caused them.  M.A. and C.C. were hit by buckshot, some of which remained under their skin for years, in their arms, legs, and back.  D.H. was the most seriously injured, with buckshot striking his chest, back, abdomen, and neck, causing a hole in his jugular vein.  After several people refused to help him, D.H. eventually found good Samaritans who drove him to the hospital, where he received surgery for his injuries.  Without that surgery, D.H. likely would have died.  This factor weighs in favor of a sentence at the top end of the range permitted by the plea.

*Deterrence/Promote Respect for the Law.*  A ten-year sentence is also appropriate to deter the defendant and others from engaging in similar acts of violence and to promote respect for the rule of law.  The racially-motivated vigilantism in which the defendant and other residents of Algiers Point engaged directly undermines the rule of law: no person is permitted to take the law into his own hands and shoot or otherwise harass people because of their race

Further justifying a sentence at the top of the allowable range is the fact that, throughout this case, the defendant has repeatedly flouted this Court's orders.  This Court twice (once in 2011 and again in 2017) ordered the defendant to be evaluated for competency by the Bureau of Prisons, and both times he engaged in conduct that attempted to thwart these court-ordered evaluations.

The defendant also defied this Court's order, issued after this Court found him to be physically incompetent to stand trial, to update the Court and the government every six months regarding his medical conditions. The defendant failed to provide any medical updates between August 29, 2016, and September 19, 2017, despite repeated requests by the government for such updates. Significantly, during this time period, the defendant's health showed significant improvement, thereby rendering him competent to stand trial.

In August 2017, the defendant was arrested for violating the conditions of his pretrial release that prohibited him from possessing firearms. This violation was no mere accidental oversight – the U.S. Marshals recovered 17 firearms (ten rifles and seven handguns), including three loaded weapons, from the residence where the defendant was living. After he was caught, the defendant repeatedly cast blame on his mother, who had reported the violation, calling her a liar who "will land him in jail for the rest of [his] life." Jail calls, Aug. 27, 28, 2016; Sept. 21, 2016; Oct. 1, 2, 3, 4, 2016.[3] He complained that he was in jail for "absolutely nothing" and accused his mother of setting him up just to be "mean." The defendant's failure to accept responsibility for a clear violation of his pretrial release conditions strongly suggests that he will not comply with release conditions and weighs in favor of a ten-year sentence.

Finally, the sentence must also send a clear message to deter others who might engage in similar racially-motivated violence. *See United States v. Arellano-Rocha*, 946 F.2d 1105, 1108 (5th Cir. 1991) ("General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence.") The defendant did not act alone. *See* Indictment, Rec. Doc. 1. He met regularly with three men, K.S., W.J., and David LNU, to discuss killing African Americans. When two of

---

[3] These jail calls were entered as exhibits in a previous hearing. The government is prepared to move to enter them at the sentencing hearing, if the Court wishes to have them entered at that time.

9

the victims (C.C. and M.A.) fled the scene after the shooting, K.S. and W.J. chased them down and held them at gunpoint. Like the defendant, these men bragged about their race-motivated vigilantism. A ten-year sentence in this case is appropriate in order to deter others who might engage in similar racially-motivated violence.

Finally, no other sentencing factor is "sufficiently compelling" to justify any additional downward variances. *Gall v. United States*, 552 U.S. 39, 50 (2007) (cautioning that a court considering a sentence outside the guidelines range "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance"). A review of other sentences in hate crimes cases demonstrates that a ten-year sentence, consisting of a five-year sentence for the civil rights violation and five years for the firearms offense, adequately accounts for any mitigating factors that might exist in this matter. *See, e.g.*, *United States v. Metcalf*, 881 F.3d 641, 642 (8th Cir. 2018) (the defendant was convicted on one civil rights count for a racially-motivated attack on a single victim and sentenced to the statutory maximum of ten years).

## IV. CONCLUSION

The government respectfully requests that this Court accept the Plea Agreement filed in this matter and submits that a sentence of five years of imprisonment for Count One, five years, to be served consecutively, for Count Two, and a five-year term of supervision appropriately takes into account all of the Section 3553(a) factors.

Respectfully submitted,

PETER G. STRASSER
UNITED STATES ATTORNEY


/s/ Mary J. Hahn
MARY J. HAHN
Trial Attorney
JARED FISHMAN
Special Litigation Counsel
U.S. Department of Justice
Civil Rights Division
601 D Street NW, Rm 5200
Washington, DC 20579
Telephone: (202) 305-0921

DAVID HOWARD SINKMAN
Assistant United States Attorney
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3024

## CERTIFICATE OF SERVICE

      I hereby certify that on February 7, 2019, I electronically filed the foregoing with the U.S. Probation Office by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                        /s/ Mary J. Hahn
                                        Trial Attorney